## RICHMOND, F. & P. R. CO. v. BROOKS.
### No. 11211.

United States Court of Appeals
District of Columbia Circuit.

Argued March 11, 1952.

Decided May 15, 1952.

Mr. G. Bowdoin Craighill, Washington, D. C., with whom Messrs. Arthur Murray Preston and Richard H. Mayfield, Washington, D. C., were on the brief, for appellant.

Mr. Bernard M. Savage, Baltimore, Md., with whom Mr. Alfred L. Bennett, Washington, D. C., was on the brief, for appellee.

Before EDGERTON, PROCTOR and FAHY, Circuit Judges.

FAHY, Circuit Judge.

A money judgment for personal injuries alleged to have resulted from an abnormally rough stop of a long freight train which threw plaintiff, appellee, across the floor of the caboose, was awarded to plaintiff in the District Court against appellant railroad. The questions on the appeal are whether the court erred (1) in submitting to the jury the issue whether the engineer was negligent, and, if so, (2) whether his negligence was a proximate cause of the accident, and (3) in instructing the jury as to the meaning of the Safety Appliance Act.

The train was en route from Richmond to the vicinity of Washington. It was composed of about one hundred and twelve cars. Its locomotion was supplied by four diesel units. When well along the way and traveling about 50 miles an hour smoke and some fire were observed by crewmen coming from beneath a car near the middle of the train. The engineer was signalled that the cause was a hot box. If it was, there was evidence that company rules required the train to be brought to an immediate stop to avoid the wringing off of an axle with possible derailment or other serious consequences. The engineer, however, due in part to the color of the smoke, thought the trouble was a sticking brake. He accordingly applied and then released the air brakes, which was a method of remedying a sticking brake. This first slowed down the train to a speed of approximately 20 to 25 miles per hour, but after the brakes were released the speed gradually increased. The pressure in the air brake system was reduced by this operation.

Meanwhile the conductor in charge of the train, who was in the caboose with plaintiff, had also noticed the smoke and correctly concluded it was due to a hot box. The train-brake system, as well as being subject to control by the engineer was equipped with a valve in the caboose for use by the conductor in an emergency. He decided to apply the brakes by this means but when preparing to do so the train began to slow down because of the action of the engineer already described, which led the conductor to believe the engineer was stopping the train. When the train then began to gather speed, however, the conductor concluded the engineer had in fact not observed the smoke. He thereupon applied the brake system by opening a valve attached to the rear of the caboose. The result was the rough stop which threw plaintiff, an employee of defendant, to the floor.

Two statutes are material, the Federal Employers' Liability Act, 35 Stat. 65 (1908), 45 U.S.C. § 51 et seq. (1946), as amended, 45 U.S.C.A. § 51 et seq.; and the Safety Appliance Act, 27 Stat. 531 (1893), 45 U.S.C. § 1 et seq. (1946), as amended, 45 U.S.C.A. § 1 et seq.

■ *The Federal Employers' Liability Act.* This Act provides that a carrier while engaged in interstate commerce is liable for injuries to an employee resulting in whole or in part from the negligence of any of its officers, agents or employees. The court accordingly instructed the jury that if the engineer was negligent in failing to bring the train to a stop when he saw or in the exercise of reasonable care should have seen smoke or fire or both emanating from the car and if such negligence proximately caused in whole or in part the conductor to apply the brakes in the usual and customary manner which, under the circumstances, brought the train to an unusually violent stop, thereby throwing plaintiff to the floor and injuring him, they should bring in a verdict for the plaintiff.

We think this instruction, accompanied as it was by a requirement that the jury find other essential facts, was not erroneous. There was evidence from which the jury could reasonably and honestly conclude, Higashi v. Shifflett, 1952, 90 U.S. App.D.C. ——, 195 F.2d 784, that the engineer was negligent in not bringing the train to a stop and in handling the train so as to lead the conductor to believe the engineer was unaware of the danger or

was failing to cope with it. This caused the conductor to act.[1]

The evidence becomes clearer on consideration of the question of proximate cause. While the opening by the conductor of the valve in the caboose intervened between the engineer's actions and the abnormal stop which caused the injuries the valve operation by the conductor was part of a natural sequence of events in the management of the train, closely connected with the engineer's participation in such management. The actions of these two men almost inevitably were tied together, as it were. There was a necessary reaction of one on the other in the control of the train. New York Cent. R. Co. v. Brown, 6 Cir., 1933, 63 F.2d 657, 658, certiorari denied, 1933, 290 U.S. 634, 54 S.Ct. 52, 78 L.Ed. 551. The steps taken by the conductor were directly connected with those of the engineer in a closely knitted causal chain which in combination led to the injuries.

The applicable principles are discussed in Brady v. Southern Ry. Co., 1943, 320 U.S. 476, 483–484, 64 S.Ct. 232, 88 L.Ed. 239, which also arose under the Federal Employers' Liability Act, where the opinion in Milwaukee & St. Paul Ry. Co. v. Kellogg, 1876, 94 U.S. 469, at page 475, 24 L.Ed. 256, is quoted. In our court the question has been discussed in a number of cases. Washington, A. & Mt. V. R. Co. v. Lukens, 1909, 32 App.D.C. 442; LeFoe v. Corby Co., 1912, 38 App.D.C. 54; Munsey v. Webb, 1911, 37 App.D.C. 185, affirmed, 1913, 231 U.S. 150, 34 S.Ct. 44, 58 L.Ed. 162, and see Howard v. Swagart, 1947, 82 U.S.App.D.C. 147, 161 F.2d 651 and Hitaffer v. Argonne Co., 1950, 87 U.S.App.

D.C. 57, 183 F.2d 811, certiorari denied, 1950, 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624.

The interconnection between the negligence of the engineer, assuming his conduct was negligent, and the action of the conductor, both in seeking almost simultaneously to control a massive train in an effort to remedy the same dangerous condition, was, we think, properly for the jury on the issue of proximate cause. Milwaukee & St. Paul Ry. Co. v. Kellogg, supra, 94 U.S. at page 474, 24 L.Ed. 256.

*The Safety Appliance Act.* Section 1 of this Act provides:

"It shall be unlawful for any common carrier engaged in interstate commerce by railroad to use on its line any locomotive engine in moving interstate traffic not equipped with a power driving-wheel brake and appliances for operating the train-brake system, or to run any train in such traffic that has not a sufficient number of cars in it so equipped with power or train brakes that the engineer on the locomotive drawing such train can control its speed without requiring brakemen to use the common hand brake for that purpose." 27 Stat. 531 (1893), 45 U.S.C.A. § 1.

There is no dispute the locomotive was equipped with power or train brakes as thus described. But the court instructed the jury that in addition the law requires that "the train brakes must operate efficiently, that is, must function properly and the defendant is liable under this Act for injuries proximately caused, in whole or in part, by the operation of the train with a braking system which did not operate efficiently * * *."[2]

1. Apparently there were no means of communication between the engineer and conductor.

2. At another point the court stated the matter as follows:
"If the jury finds from the evidence that the accident was proximately caused, in whole or in part, by the failure of the air brakes to function efficiently at the time of the accident, although applied in a normal, usual and customary manner by the conductor from the caboose by the control of the conductor's valve, then said failure fastens liability on the defendant, irrespective of whether the defendant was negligent or not."
Liability for injuries proximately caused by a violation of the Act, without regard to proof of negligence, is not questioned. Myers v. Reading Co., 1947, 331 U.S. 477, 482, 67 S.Ct. 1334, 91 L. Ed. 1615, and cases cited.

█ The objection to this instruction specified in the trial court was in substance that the Act does not require the air brakes to function efficiently but only that the system be not defective. We think this position is unsound. In Myers v. Reading Co., 1947, 331 U.S. 477, 67 S.Ct. 1334, 91 L. Ed. 1615, the Supreme Court refers to the Safety Appliance Act in terms of efficient and proper working of the required mechanism and indicates that the inefficiency of a brake may··consist not only of its defective condition but in its defective functional operation. See, also, Affolder v. New York, C. & St. L. R. Co., 1950, 339 U.S. 96, at page 98, 70 S.Ct. 509, 94 L.Ed. 683, and O'Donnell v. Elgin, J. & E. R. Co., 1949, 338 U.S. 384, 70 S.Ct. 200, 94 L.Ed. 187.

█ In this court appellant strongly urges, in addition to the objection specified below, that since the train-brake system admittedly consisted of equipment which in and of itself complied with the·statute it was error to permit the jury to find noncompliance due to its alleged defective functioning when the conductor, rather than the engineer, brought the system into play. As indicated, no such objection was specified below, and accordingly it might well be argued, under Rule 51 of the Fed. R.Civ.P., 28 U.S.C.A., that review of this alleged error is not available to appellant. See Palmer v. Hoffman, 1943, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645; Frasca v. Howell, 1950, 87 U.S.App.D.C. 52, 182 F.2d 703, 704; Ersler v. T. F. Schneider Corp., 1951, 88 U.S.App.D.C. 371, 188 F.2d 1022. But the importance to the law of the case of an accurate instruction on the Safety Appliance Act leads a majority of the court to scrutinize the instruction given for possible error. Montgomery v. Virginia Stage Lines, 1951, 89 U.S.App.D.C. 213, 191 F.2d 770.

██ A fair reading of the statute in the light of its purpose, and as it has been construed in Myers v. Reading Co., supra, requires that the train-brake system function efficiently not merely in or from the engine. When the carrier installs appliances which divide the power brake control between the engineer and the conductor, instead of giving constant exclusive control to the engineer, this seeming departure from the literal language of the Act is not to be construed either to violate the Act or to relieve the carrier of liability for inefficient functioning of the equipment. The literal reading of the applicable. provision is not necessarily the correct one. In addition to analyzing the language used as a guide to decision the policy and spirit of the law must be heeded. United States v. American Trucking Ass'ns, 1940, 310 U.S. 534, 542–543, 60 S.Ct. 1059, 84 L.Ed. 1345.[3] The Act contemplates a system of power control emanating from the engine. It is there the power is generated and the engineer functions. Pressure is built up in the brake system through control exerted by the engineer in the engine. He can manipulate this pressure to regulate the speed of the train and obviate the danger and uncertainty of control by hand brakes. But if, as a part of such a power system the appliances actually installed, as in this case,

3. "In the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress. There is no invariable rule for the discovery of that intention. * * *
"There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words. * * *" 310 U.S. at pages 542–543, 60 S.Ct. at page 1063.
See, also, Markham v. Cabell, 1945, 326 U.S. 404, 409, 66 S.Ct. 193, 90 L.Ed. 165; Sorrells v. United States, 1932, 287 U.S. 435, 446 et seq., 53 S.Ct. 210, 77 L.Ed. 413.

place control also in the conductor, efficient functioning remains essential. Delegation of partial control to the conductor does not avail to permit inefficient operation of the appliances when control is actually exercised by the conductor. This is the substance of the trial judge's instruction. I think his interpretation of the Act was correct. It gives effect to the Congressional purpose when applied to trains of the character and equipment here involved. If such a train, so equipped, with a control valve for emergency use by the conductor in the caboose is to be deemed in conformity with the statute then the system must function properly when either he or the engineer operates it.

■ While the precise question presented is one of first impression, this construction seems to conform with the approach of the Supreme Court as evidenced, for example, by Coray v. Southern Pacific Co., 1949, 335 U.S. 520, 69 S.Ct. 275, 93 L.Ed. 208, where a narrow construction of the Act was avoided. The Act is to be liberally construed in keeping with its purpose, Lilly v. Grand Trunk & Western R. Co., 1943, 317 U.S. 481, 486, 63 S.Ct. 347, 87 L.Ed. 411, namely, to promote the safety of trains and of persons and property thereon. New York Central R. R. v. United States, 1924, 265 U.S. 41, 44-45, 44 S.Ct. 436, 68 L.Ed. 892. This reading of the Act in its present application means no more than that its provision for power or train brakes to control the speed of the train in place of common hand brakes, contemplates an air brake system which functions properly whether at the critical moment the engineer actually operates it or the conductor does so through appliances designed to enable him to do so.

There was evidence from which the jury could find that the system failed to function properly when the conductor, without negligence on his part, brought it into operation in a manner usual and customary to the exercise of control by him, and that such failure was a proximate cause of the injuries.

Affirmed.

EDGERTON, Circuit Judge.

I concur in affirmance, and in the opinion except that part of it which rules upon the application of the Safety Appliance Act when the brake system is operated by the conductor. I think Rule 51, Fed.R.Civ. P., makes it unnecessary for us to consider that question.

PROCTOR, Circuit Judge, dissents except as to the conclusion of Judge Fahy that the questioned instruction should be reviewed notwithstanding Rule 51 of the Federal Rules of Civil Procedure.