**Raymond N. HEISELMOYER, Appellant,**

v.

**The PENNSYLVANIA RAILROAD COMPANY.**

**Nos. 12044, 12045.**

United States Court of Appeals Third Circuit.

Argued Feb. 7, 1957.

Decided April 22, 1957.

B. Nathaniel Richter, Philadelphia, Pa. (Richter, Lord & Levy, Philadelphia, Pa., on the brief), for appellant.

H. Francis DeLone, Philadelphia, Pa. (Raymond W. Midgett, Jr., Barnes, Dechert, Price, Myers & Rhoads, Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Appellant claimed that while employed as an engineer by appellee railroad he sustained two separate accidents. In his complaint based on the first of these he stated that the action arose under the Federal Employers' Liability Act [1] and under the Safety Appliance Acts.[2] Later he said, "The accident hereinafter mentioned was caused by the defendant's violation of the Boiler Inspection Act." He went on to say that the accident occurred September 19, 1952, near Norristown, Pennsylvania, while he was working for the defendant as an engineer and that he "* * * suffered severe and permanent injuries by reason of a defect in the improperly constructed seat and seating arrangement on the locomotive of the defendant." The second suit is under the Employers' Liability Act. In it appellant asserted that on July 9, 1954 at appellee's Sunnyside (Long Island, N. Y.) Yards he "* * * suffered severe and permanent injuries by reason of a yard mechanic negligently opening a door inward on the engine and striking plaintiff while he was working." The injury urged was aggravation of the back condition allegedly resulting from the Norristown accident. The two causes were consolidated for trial on plaintiff's motion.

According to plaintiff's first action the engine seat interfered with the safe operation of the locomotive because it interfered with the independent brake valve. He therefore tried to remove the back-rest and while tugging and yanking at it he fell backward and was hurt. At the pretrial conference plaintiff's theory of liability was clearly stated as arising from the dangerous condition of the seat.

---

1. 45 U.S.C.A. § 51 et seq.

2. The Boiler Inspection Act is found at 45 U.S.C.A. § 23; the Safety Appliance Acts pertaining to brakes at 45 U.S.C.A. § 1.

His trial memorandum repeated this as did his opening address to the jury. The trial followed the same pattern and summation for appellant gave the jury the trouble with the seat as the sole issue. On the fourth trial day and after plaintiff had rested, his attorney, giving an opinion citation to the court, said " * * * may I just give you one thought in connection with this case * * * Now so that among other things Your Honor will understand our position in this case on the liability, as far as the Boiler Inspection Act is concerned and in so far as the brakes are concerned, safety appliances, it is covered by Section 11, 35 [45] U.S.C.A." This and requests to charge with exception to their denial are the only references prior to verdict of a contention of a defective brake as such. In the course of plaintiff's motion for a new trial there was a closely argued question of whether the independent brake was a Safety Appliance under the Safety Appliance Acts covering brakes, 45 U.S.C.A. § 1. It appeared highly questionable that the auxiliary independent brake, which was not known when this particular part of the law was adopted, was a safety appliance within the section.[3] Then plaintiff went to his present position here argued that the independent brake was a defective appurtenance under the Boiler Inspection Act because of the contact between it and the seat-rest when the latter was so turned that it and whoever might be occupying it faced the rear of the locomotive.

■ Though the shift of position came too late and irrespective of its tenuous foundation and no covering request to charge, examination of the record reveals the court squarely placed before the jury plaintiff's proposition that his injury proceeded from the fundamental fact, as the court said, that " * * * the seat would not turn 360 degrees; that is turn completely around, that when it was turned it hit the brake valve lever

* * *." The court continued, telling the jury that " * * * it is your duty to determine from the testimony on this phase of the matter whether or not the seat was defective or not in good condition." Then the court said "If in your considered judgment, and yours alone, based upon your understanding of the evidence, the seat was defective and the defective seat was a contributing cause of the plaintiff's injury, your verdict should be for the plaintiff." True the judge did not repeat this in terms of it being a jury question whether the brake was a defective appliance under the Boiler Inspection Act if there was such contact but he had given the jury a practical formula for its guidance on this branch of the problem. It could not be misunderstood. If the jury had concluded that contact between the seat and the brake lever had created a defective condition, irrespective of whether it was attributed to the seat or to the brake, if that condition was a proximate cause of the accident, the jury was bound to render a verdict in plaintiff's favor. The actual verdict must be accepted as a finding to the contrary.

■ Appellant complains about the refusal to charge his request with reference to no necessity of proving the precise defect that caused the back-rest to snag. There is no substance to the objection. The court established the widest possible latitude for plaintiff's evidence in this connection saying:

"On the other hand, if you find by the preponderance of the evidence the seat was defective or in bad condition, then you must next consider whether the defective seat was a contributing cause of the plaintiff's injury.

"If, in your considered judgment, and yours alone, based upon your understanding of the evidence, the seat was defective and the defective seat was a contributing cause of the

**3.** 45 U.S.C.A. §§ 1, 9, 11; United States v. Erie R. Co., 1915, 237 U.S. 402, 407–408, 35 S.Ct. 621, 59 L.Ed. 1019; Richmond F. & P. R. Co. v. Brooks, 1952, 91 U.S.App.D.C. 24, 197 F.2d 404, 407.

plaintiff's injury, your verdict should be for the plaintiff."

■ In the circumstances of the case we find no error in the court's instruction regarding unnecessary peril. After reading the pertinent part of the Boiler Inspection Act the court said:

"I charge you, Members of the Jury, that the defendant railroad, Pennsylvania Railroad in this case, was under a duty to see that the locomotive, to which the plaintiff in this case was assigned, and its appurtenances, one of which was the seat in question, was maintained in good condition so that it could be employed in the active service of the carrier without unnecessary peril to the life and limb of the plaintiff.

"In other words, the defendant, the Pennsylvania Railroad, has an absolute and continuing duty to provide and maintain its locomotive and the attached apparatus and appurtenances so as to provide a safe place to work for its employees.

"When you say 'safe,' however, you must consider 'safe' in the context here and remember what sort of places and equipment the railroad has to do with. When you say 'safe' in connection with a locomotive, you don't mean the same thing as you would if you used the word 'safe' in connection with the parlor floor, or the front or back door of your home.

"A locomotive cannot be made 'safe' in that sense. It is a piece of equipment that necessarily can injure people. So that when you talk about 'safe' it is being used in connection with a locomotive and is qualified here by the statement in the section of the Boiler Inspection Act, 'that the same may be employed in the active service of such carrier without unnecessary peril to life and limb * * *' It does not say 'any peril to life or limb'; it says, 'without unnecessary peril to life or limb * * *'"

As we have already seen, under the charge, if the jury found the seat defective, it did not have the further step of determining that it was an unnecessary peril before it could arrive at a plaintiff's verdict. Once the defect was established and the jury concluded it contributed to the accident, a decision in favor of the plaintiff was required by the instruction of the court.

Complaint is made that the court improperly refused to charge that assumption of risk was no defense to the first suit under the Boiler Inspection Act.

■ The trial judge categorically laid down the correct rule in his charge that:

"A railroad employee does not assume the risk of his employment."

■ In addition the entire mechanics of submitting the Norristown occurrence to the jury eliminated any idea of assumption of risk. The judge told the jury if it found a seat defect which contributed to the accident there should be a verdict for the plaintiff. He added: "There is no question of any contributory negligence in this case. In other words any negligence of either the plaintiff or defendant does not enter into the case at all, that is the first case, and is not to be considered by you." This element, which was not really a trial problem at all, was discreetly and properly disposed of by the court.

■ Appellant's next point has to do with two statements in summation by defense counsel. Attempt is made to bring the first of these under our decision in Straub v. Reading Company, 3 Cir., 1955, 220 F.2d 177. In Straub affirmative reference was made in summation to a statement which was not in evidence. Here the attorney for the plaintiff in summation had presented an interpretation of an interrogatory and its answer unfavorable to the defense and which was open to attack. That was replied to without timely objection. We find nothing of substance in this connection. The second statement reads:

"The only other person who might be able to help us on this was Law-

ler, the fireman. He's out of the service, not working for the railroad and presumably the plaintiff can't find him, so none of us have the benefit of his testimony in this cause."

Appellant argues that the last phrase in the above could only leave the inference that the railroad was anxious to have Lawler present as he would be a favorable witness for it. That reason was offered to the district court some two months after the entry of judgment. The court dismissed it as not within 59 (b) of the Rules of Civil Procedure, 28 U.S.C. Aside from that the language, if it is to be read with appellant's glasses, must be taken to mean that Lawler would have been a helpful witness for both sides. The point is de minimis.

In this long bitterly contested trial the patient competence of the trial judge was the one notably commendable feature. He dealt with both sides fairly. Plaintiff had his full day in court. The jury verdicts have sound foundation in the record. There was no substantial error by the trial judge in his rulings or in his charge.

The judgments of the district court will be affirmed.