## DILLINGHAM v. CHEVROLET MOTOR CO.

### No. 5955.

District Court, W. D. Oklahoma.
Dec. 22, 1936.

Taylor, Muse & Taylor, of Wichita Falls, Tex., and Roe & Roe, of Frederick, Okl., for plaintiff.

Abernathy & Howell, of Oklahoma City, Okl., for defendant.

VAUGHT, District Judge.

C. H. Dillingham, the husband of the plaintiff, on or about the 13th day of August, 1933, purchased a Chevrolet automobile from Murrell Brothers Motor Company, Frederick, Okl., who were regular dealers for said cars. The car, according to the petition of the plaintiff, was used by the said Dillingham and by his wife, the plaintiff in this action, continuously from the date of its purchase until the 20th day of May, 1934, at which time the plaintiff was driving said car to Oklahoma City.

The petition alleges:

"That said car was apparently in good condition and was seemingly running without any trouble or defect when she left her home in Frederick, Oklahoma, and until she arrived near the town of Indiahoma, Oklahoma, at which time one or more of the wheels on said car which she was driving locked, causing said car to skid for a short distance and then turn over. That when said car turned over, and when plaintiff had been rescued therefrom said car was found to be badly wrecked and damaged, the top and fenders and other parts of said car being badly bent, smashed up and wrecked, and the rear glass on the right hand side of said car was broken and the plaintiff received the injuries hereinafter alleged.

"Plaintiff further represents and shows unto the court that the plaintiff had driven automobiles a great deal before the time of the aforementioned wreck; that she had driven the particular car in question a great deal. That she was a careful and painstaking driver. That at the time of said wreck, she was driving at a moderate rate of speed, not to exceed 40 miles per hour, and was driving in a careful and prudent manner. That the road on which she was driving said car at the time said car began to skid and turn over as hereinbefore alleged was a smooth hard-surfaced road and that there was no reason for said car to skid or turn over as hereinbefore alleged, except for the defect or defects in said car which is hereinafter alleged."

The petition further alleges: "That after said car turned over and when a wrecker was called to remove said car, it was found that the brakes on said car were locked and it was necessary for the person in charge of said wrecker to take a hammer and knock said brakes loose before he was able to move said car. That the locking of said brakes and the skidding of said car as hereinbefore alleged caused said car to turn over. That prior to said accident the said plaintiff nor her husband had any information or notice that said car was equipped with defective brakes and in truth and in fact said defects or defect connected with said brakes was or were hidden or latent defects and could not be discovered by her or them until such time as said brakes did lock and cause said car to skid and turn over as hereinbefore alleged."

The petition further, in specifically enumerating the defects in said brakes, states:

"(a) That said brake shoes were designed and constructed of different length, thereby causing the brake pressure to be unequally distributed on the brake drum or drums, and causing said brake or brakes to grab or lock. (b) That said articulating links were improperly designed, con-

structed, and attached to said brake shoes, thereby causing said brake shoes to distribute unequally the pressure on said brake drum or drums. (c) That the cam shaft and brake cam were improperly designed, constructed, and inserted in said wheel or wheels and said brake or brakes, in that no method of lubrication was provided, thereby permitting said brake cam shaft or shafts to freeze or stick in the wheel where inserted, thereby permitting the brake cam or cams to keep pressure on the brake shoe or shoes, thereby causing the brake or brakes to lock. (d) That said brake cam shaft and brake cam or shafts and cams were improperly inserted in the rear wheels of said automobile in that the same were inserted below the axle and said brake cams were so attached that when pressure was applied on the brake pedal that said brake cams rotated in such manner as to centralize the brake pressure on one end only of each of the brake shoes in said wheel, thereby causing said brake shoes to grab and have a tendency to lock said wheel. (e) That the brake linings designed, constructed, and inserted in said automobile were improperly designed, constructed, and furnished in that the same was manufactured of a kind and character of material that would grab when coming into contact with the brake drum, thereby causing the brakes of said automobile to lock. (f) That the brake linkage of said automobile consisting of the brake pedal and all brake rods and shafts leading therefrom to the brake levers attached to said brake cam shafts were so designed, constructed, and attached on said automobile that they were and did become loose on said automobile and swing and vibrate in such manner as to turn the brake cam shaft or shafts and brake cam or cams aforesaid, thereby applying said brake or brakes without pressure being placed on the brake pedal by the driver of said automobile.

"That such defective designing, constructing, and assembling of said automobile and all of the brakes on the same and the aforesaid mentioned parts of said brakes and a combination of one or more of the same was or were such that it or they would and did cause said brake shoes to clamp down on the brake drum or drums of said automobile and could, would, and did so clamp down on the brake drum or drums of said automobile, thereby causing the same to grab or lock, and did cause said car to suddenly skid and turn over, as hereinbefore alleged, and caused the damage to said car as hereinbefore alleged. That said defective brake or brakes as hereinbefore alleged was or were the proximate cause of said wreck and was or were the direct and proximate cause of the skidding and turning over of said car as well as of the injuries of the plaintiff, as hereinbefore alleged; that but for said hidden latent defect or defects, said wreck and injuries to said car would not have occurred and the plaintiff would not have received the injuries and suffered the damages hereinafter alleged."

The defendant has filed its demurrer to the petition, which is in the nature of a general demurrer, stating that the petition does not state facts sufficient to constitute a cause of action, and specially demurring to paragraphs 4, 5, and 6, wherein it is alleged that the defendant was guilty of negligence in the designing and construction of the brakes and the various concomitant parts thereof.

The plaintiff has not alleged the mileage which said car had traveled from the date of its purchase, but she does state that she had "used said car a great deal"; that the car had always run perfectly and had given no occasion either to her or her husband to suspect there were any defects of any nature or character.

The specific allegations in the petition that the car was improperly designed, planned, and constructed, as hereinbefore stated, are most certainly conclusions. However, if these conclusions are correct and are based upon fact, then the car would not have operated at all without locking the wheels. It is unusual that a car driven for nine months, as cars are usually driven in Oklahoma, if a defect were present, that said defect would not have been disclosed before that time. It is apparent from the petition that no defect was ever discovered and no cause for apprehension existed until after the car was wrecked, and then the defect was detected by an automobile mechanic after he had knocked the brakes loose from the wheel.

The petition furthermore states that it was not apparent whether the accident resulted from the locking of one wheel or more than one wheel.

Should the plaintiff be permitted to go to the jury with these facts and permit the jury to determine from said facts whether or not she is entitled to recover? Should the court permit statements and conclu-

sions, such as are contained in the petition, to go to the jury as a basis for pure speculation as to what caused the accident? In matters of this character, courts are not supposed or required to ignore knowledge and facts so common that they are obvious to all users of automobiles, and it is apparent that many accidents result more from a defective driver behind the wheel than from a defective spoke in the wheel.

The court cannot ignore the fact that the Chevrolet automobile is an automobile of general use. In fact, it is an automobile whose general use is equaled or exceeded by few cars on the market, and if the defects complained of by the plaintiff, as to design and construction, were as alleged in the petition, certainly they would have been apparent in some of the hundreds of thousands of such cars in general use at the time of this accident.

But aside from the specific allegations of negligence, other questions are raised by this demurrer.

It is as well known to jurors as any one else, that brakes should be inspected at reasonable times the same as other portions of the car, and the use of an automobile continuously for nine months certainly might raise the question as to whether or not the brakes had not become filled with dust and other material which would cause the result alleged in this case.

It is furthermore generally known that on smooth roads the immediate application of brakes will cause a car to skid.

All of these matters materially increase the opportunity for hazardous speculation.

Another question, however, has been raised in this case which cannot be ignored. No contractual relationship existed in this case between the plaintiff and the manufacturer of the automobile. The plaintiff did not even own the car, but was merely driving her husband's car, it is assumed, with his permission.

The Oklahoma Supreme Court has passed upon this question and has laid down definite rules which are binding upon this court. In Ford Motor Co. v. Livesay, 61 Okl. 231, 160 P. 901, the court said, quoting from the syllabus: "An automobile is not an inherently dangerous machine, and the rules of law applicable to dangerous instrumentalities do not apply." And further: "The general rule, subject to certain exceptions not involved in this action, is that a manufacturer or vendor of an automobile is not liable to third parties who have no contractual relations with him for negligence in the construction, manufacture, or sale of such machine." In the body of the opinion it is said:

"It is a general rule that a manufacturer or vendor is not liable to third parties who have no contractual relations with him for negligence in the construction, manufacture, or sale of the articles he handles. In the leading case of Winterbottom v. Wright, 10 Mees. & W. 109 [an English case], the rule is placed upon the ground of public policy. There would be no end of litigation if the manufacturers were to be held liable to the third persons for every act of negligence in the construction of the machines they make after the parties to whom they have sold them have received and accepted them. In the case of the Cadillac Motor Company v. Johnson, 221 F. 801, 137 C.C.A. 279, L.R.A. 1915E, 287 [Ann.Cas.1917E, 581], the court held:

"'A manufacturer of automobiles, which purchased the wheels used on its automobiles, was not liable to an injured person, who purchased an automobile manufactured by it from a dealer, and who had no contractual relations with it, for its negligent failure to discover that one of the wheels was defective, since, while one who manufactures articles inherently dangerous is liable to third parties injured by such articles, unless he exercises reasonable care, one who manufactures articles dangerous only if defectively made is not liable to third parties for injuries, except in case of willful injury or fraud.'"

This court is not unmindful of the New York case, MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696, Ann.Cas.1916C, 440. The court in that case laid down a rule which can be easily abused. It went much further than any other court had gone before, in placing the liability on the manufacturer of the automobile for any defect in material or construction that might exist in the car and held the manufacturer under such circumstances liable to the owner although there was no contract between the owner of the car and the manufacturer. But that decision was based upon the existence of a specific defect in a part of the machine, and even though the court should

be inclined to follow the rule in the Buick Case, the allegations of the petition in this case fall far short of the facts as disclosed in that case.

■ It is a well-known fact that different automobile manufacturers rely upon the judgment of their own engineers, and it would be an easy matter for an engineer for a different make of car than the Chevrolet to criticize the entire mechanical construction of the Chevrolet car. An engineer, for instance, might take the position that the steering wheel should be on the right side, or that the engine should be located in the rear of the car, or that the brakes should be applied only to the rear wheels. But such a difference in judgment of the engineers would not be sufficient to justify the conclusion that a manufacturer, who followed the advice of his engineer, would be guilty of negligence.

The court in this case has included in this opinion a large portion of the petition and specifically that part of the petition which alleges negligent acts of the manufacturer, and in each of these allegations of negligence, we find that the specific act of negligence alleged is the improper *designing* and *construction* of the brakes. There is no allegation that any portion of the brakes was defective or that material was used in the construction of the brakes which would make their use dangerous. This can only amount to a conclusion of the pleader that he knows more about the construction of an automobile than the manufacturer.

A careful consideration of the petition discloses that the only evidence of defective brakes was the accident itself. Here is a car that had been driven for nine months, and according to the petition, had operated in an entirely satisfactory manner. There was nothing in the operation of the car during this long period which indicated anything but perfect design and construction.

These are all general conclusions, and if the facts alleged in the petition were proven and submitted to a jury, no conclusion could be reached by a jury except from pure speculation.

The court has examined carefully the authorities cited and is of the opinion that, under the facts stated in this case, there is no reason to depart from the rule as laid down by the Oklahoma Court in the Livesay Case. The demurrer will be sustained. An exception is allowed the plaintiff. The plaintiff will be allowed fifteen days to elect whether or not she will stand upon the petition.