PHILEMINA DE SALVO, Respondent, *v.* STANLEY-MARK-STRAND CORPORATION, Appellant.

SOL DUCKOWITZ, an Infant, by IDA DUCKOWITZ, His Guardian ad Litem, Respondent, *v.* STANLEY-MARK-STRAND CORPORATION, Appellant.

IRVING ZUSSMAN, Respondent, *v.* STANLEY-MARK-STRAND CORPORATION, Appellant, Impleaded with Another.

Argued October 4, 1939; decided October 30, 1939.

*Walter G. Evans, Alexander Orr, Jr.,* and *James H. Brassel* for appellant.

*David L. Cohn* for Philemina De Salvo, respondent.

*H. Lee Kanner* for Sol Duckowitz, respondent.

*Richard J. Mackey, Murray Brensilber* and *Milton Zwisohn* for Irving Zussman, respondent.

CRANE, Ch. J. The defendant-appellant maintains a moving picture theatre on Broadway in the city of New York, known as the Strand. As to its construction there is no dispute. The theatre was designed by a well-known architect, Thomas W. Lamb, who had had . thirty-five years' experience. The plans were approved by the Building Department in 1913 when the building was erected. Over the rear section of the orchestra there was constructed in the mezzanine an open oval seventy-six feet eight inches long and twenty feet wide at its widest points. The opening was surrounded by a balustrade which was thirty-two inches high and five and one-half inches wide. At each end of the opening there were rest rooms, the distance from the rest room door to the railing being eight feet three inches. At other points around the mezzanine the distance from the rail to the wall was greater than that. From the top of

the railing to the top of the orchestra seats below was fifteen feet three inches.

This case rests upon the claim that the balustrade around this opening in the mezzanine floor was not high enough to prevent people falling over who may have been pushed or jostled. Thirty-two inches high comes a little above the hips of the ordinary person, and five inches spread on top is of course many times larger than the usual railing. The owner of this theatre, it is claimed, should in the exercise of reasonable care have anticipated that someone might fall over, although such an accident had never occurred, so far as the proof in this case shows. This theatre was constructed in the same way and according to the plans of some of the other theatres in the greater city, as well as in Canada and other cities of the United States. The balustrade, as stated, was thirty-three inches above the concrete floor and thirty-two inches above the carpet.

The nature of the accident was seriously disputed, but, taking the case as made out by the plaintiff, as we must do, it appears that on the night of October 10, 1936, Mr. Duckowitz and Yetta Goldstein were walking along the mezzanine floor when someone shoved Duckowitz who in turn shoved Yetta Goldstein, and both fell over the railing onto people below who also have brought action against this defendant. This case, as stated before, rests entirely upon the point that this railing was insufficient to prevent such an accident, and that the defendant or its officers, in the exercise of reasonable care, should have foreseen the danger. To reach this conclusion requires application of a stricter rule than has ever been applied to negligence cases relating to the construction of buildings.

When a well-known architect constructs a theatre in accordance with the approval of the Building Department, and also similar to like classes of structures, and the theatre as built has been safe in constant use for many years, the mere fact of the happening of an accident is not sufficient to cast responsibility for faulty construction upon the owner. This theatre was inspected annually by the Building

Department of the city of New York. The building inspectors called, testified that the conditions met with the official approval of the department. The theatre had a capacity of 2,758 people. It had been operating for twenty-three years at the time of the accident, during the course of which hundreds of thousands of men, women and children passed by the opening and railing without mishap. As stated before, there was no proof of previous accidents in the mezzanine, and the manager of the theatre testified that for fifteen years that he had been there, there had been no accidents. True it is that guards were stationed on the mezzanine floor to prevent people from sitting on the top of the rail, which was five inches wide. This case does not arise out of anybody sitting on the rail, nor from the failure of the guards to prevent people sitting on the rail. It is claimed that Yetta Goldstein, being jostled by the crowd, fell over the thirty-two-inch railing with the five-inch top.

In numerous cases in this State recovery has been sought for accidents happening out of construction work claimed to be defective in plan. The happening of the accident does not and cannot of itself be evidence of faulty construction. Of course a condition may be so bad that its danger is readily apparent, but in the authorities hereafter cited it will be noted that this court has repeatedly held that although a place may be dangerous and an avoidable accident has happened, yet the owner is not liable for faulty construction simply because the accident could have been avoided, unless it be one which could reasonably have been anticipated in the light of experience. Continued user for a long period of time without any accident negatived negligence arising out of claimed faulty construction. The leading case in this State for years has been *Loftus* v. *Union Ferry Co.* (84 N. Y. 455), in which Judge ANDREWS (SR.) wrote the opinion. As the ferry boats came into the slip there were guards on the side of the slip and of the gangway to prevent people from falling over. The guards proved insufficient and a child fell through and was drowned. It was held that there was no liability. Perhaps it is

well to give the facts as stated in the opinion: " The charge of negligence is based solely upon the alleged insufficiency of the guard on the side of the bridge or float adjoining the passage-way for passengers going upon or leaving the ferry-boat. * * * It did not fill the entire space between the piers. On each side there was a space open to the water of from eight to twelve inches between the bridge and the adjoining pier. * * * The bridge was constructed five or six years before the accident, and was similar to the bridges at the other ferries of the defendant. It was conceded on the trial that over forty millions of people passed annually over the defendant's ferries, and until the occurrence in question no accident had happened from any person falling or getting through the spaces in the guard " (p. 459). A young child, six years old, passing with its mother off the ferryboat onto the bridge or dock, fell through the opening in the guard and was drowned. The court said: " The defendant was bound to provide suitable and safe accommodations for the landing of passengers. The rule of the strictest diligence in this respect is the only one consistent with a due regard to the value of human life and with the relation which the defendant assumes to the public. But the rule does not impose upon the defendant the duty of so providing for the safety of passengers, that they shall encounter no possible danger, and meet with no casualty, in the use of the appliances provided by it. It was possible for the defendant so to have constructed the guard, that such an accident as this could not have happened; and this, so far as appears, could have been done without unreasonable expense or trouble. * * * The company had the experience of years, certifying to the sufficiency of the guard. That it was possible for a child or even a man to get through the opening was apparent enough. But that this was likely to occur was negatived by the fact that multitudes of persons had passed over the bridge without the occurrence of such a casualty. * * * We think the exemption of the defendant in this case rests upon the fact * * * that

the company had no reason to apprehend an accident like this, * * *."

(See, for the application of the same rule, *Dougan* v. *Champlain Transportation Co.*, 56 N. Y. 1; *Crocheron* v. *North Shore Staten Island Ferry Co.*, 56 N. Y. 656; *Cleveland* v. *New Jersey Steamboat Co.*, 68 N. Y. 306; *Maue* v. *Erie R. R. Co.*, 198 N. Y. 221.) In *Lafflin* v. *Buffalo and Southwestern R. R. Co.* (106 N. Y. 136) it was claimed that a platform leading to the cars was defective in construction as it left a space of eleven or twelve inches between the steps and the platform. The court said that as the platform had been used for many years by passengers and no one had been injured on account of this space, no inference could be drawn that the company might have foreseen that an accident was likely to happen. There was no evidence that it was not constructed in the ordinary way. " It was not bound so to construct this platform as to make accidents to passengers using the same impossible, or to use the highest degree of diligence to make it safe, convenient and useful. * * * No structure is ever so made that it may not be made safer. But as a general rule, when an appliance or machine or structure, not obviously dangerous, has been in daily use for years, and has uniformly proved adequate, safe and convenient, its use may be continued without the imputation of culpable imprudence or carelessness " (pp. 139, 141). (See, further, *Van Leet* v. *Kilmer*, 252 N. Y. 454; *McGrell* v. *Buffalo Office Bldg. Co.*, 153 N. Y. 265; *Frobisher* v. *Fifth Avenue Transportation Co.*, 151 N. Y. 431; *O'Connor* v. *Webber*, 239 N. Y. 191.)

Two of the plaintiffs in these cases were persons sitting in orchestra seats who were struck by the falling persons. Such accidents should not happen, and all will agree that persons attending theatres should not be placed in jeopardy caused by someone or something falling from above, yet the same risk would have been run if a person had jumped over the railing. When we apply the law as I have given it to the facts, we see that the accident is one of those unfortunate occurrences for which the law provides no remedy. There are many such.

In each action, the judgment should be reversed, and the complaint dismissed, with costs in all courts.

LEHMAN, HUBBS and FINCH, JJ., concur; LOUGHRAN and RIPPEY, JJ., dissent; O'BRIEN, J., taking no part.

Judgments reversed, etc.