Helen HANNA, Cicero Hanna,
Appellants,

v.

Annie C. FLETCHER, Trustee of Estate
of Florence Johnson, Benjamin F.
Fletcher, and Fred S. Gichner Iron
Works, Inc., Appellees.

No. 12050.

United States Court of Appeals
District of Columbia Circuit.

Reargued April 1, 1955.

Decided Jan. 19, 1956.

Petitions for Rehearing Denied
Feb. 17, 1956.

Writ of Certiorari Denied
June 11, 1956.

See 76 S.Ct. 1051.

Reversed and remanded.

Prettyman, Miller and Danaher, Circuit Judges, dissented.

Mr. Paul R. Connolly, Washington, D. C., with whom Messrs. Francis L. Casey, Jr., and Stanley S. Harris, Washington, D. C., were on the brief, for appellants.

Mr. David G. Bress, Washington, D. C., with whom Messrs. Alvin L. Newmyer, Jr., and Sheldon E. Bernstein, Washing-

ton, D. C., were on the brief, for appellee Fletcher.

Mr. Richard W. Galiher, Washington, D. C., with whom Messrs. Julian H. Reis, William E. Stewart, Jr., and William J. Donnelly, Jr., Washington, D. C., were on the brief, for appellee Fred S. Gichner Iron Works, Inc.

Before EDGERTON, Chief Judge, and PRETTYMAN, WILBUR K. MILLER, BAZELON, FAHY, WASHINGTON and DANAHER, Circuit Judges.

FAHY, Circuit Judge.

Appellants, husband and wife, whom we shall usually refer to as plaintiffs, sued in the District Court to recover damages from the appellees, defendants, for serious injuries suffered by the wife in May, 1949. She fell into an areaway from steps leading to the street from the front door of premises she and her husband occupied as tenants. Defendant Fletcher is the landlord or lessor of the premises.[1] Defendant Fred S. Gichner Iron Works, Inc., usually referred to herein as Gichner, in 1942 had repaired the railing of the steps. The complaint alleges that the repair was negligently and carelessly performed, as a result of which the railing gave way, causing the wife to lose her balance and fall into the areaway.

After answer the case was called for trial. Upon completion of the opening statement of counsel for plaintiffs, in which he set forth the facts he expected to be able to prove, the court ruled that regardless of whether or not these facts could be proved there was nothing for the jury to decide because, as matter of law, the defendants would not be liable. The court thus permitted no evidence to be introduced. We think this was error, because the facts set forth in the opening statement, if proved and not rebutted by defendants, made out, under the legal principles hereinafter set forth, a case

upon the basis of which the jury, though not required to do so, validly could have reached the conclusion that Gichner was negligent and that such negligence was a proximate cause of the accident to Mrs. Hanna. If so, for reasons hereinafter stated, a case for jury consideration was also stated against the defendant Fletcher, the landlord.

The opening statement represented that plaintiffs would prove, in addition to their tenancy, the following facts. In 1942 the cast iron front steps were in a general state of disrepair. The railing on the right as one faces the house had fallen down. Plaintiffs requested the landlord to have the steps repaired. The landlord undertook to do so. She engaged Gichner, an iron contractor, to repair the steps "as necessary." This Gichner undertook to do. Because of the allegedly negligent manner in which Gichner made the repairs, as plaintiffs offered to prove, Mrs. Hanna was caused a fall when, in descending the stairs, she leaned upon the rail and it gave way. The steps were cast iron and descended from the front of the house to the sidewalk, crossing over a basement areaway between the wall of the house and the sidewalk. Railings were located on each side of the steps to prevent those using the steps from falling into the areaway. These railings were iron pipes running diagonally from newel posts on the top step to other newel steps on the bottom step. The railings were fitted into collars and were thereby affixed to the newel posts. The newel posts did not support the railings or take the stress of forces applied against the railings. The newel posts were hollow. An anchor rod passed down through the newel posts, pierced the surface on which the newel posts rested, and was then nutted on the under side of this surface. The anchor rod thus held the rail upright, maintaining it rigid and taking the stress and strain of forces applied to the railing. The

---

[1]. The premises were leased to the plaintiffs by the defendant Benjamin F. Fletcher as agent of the defendant Annie C. Fletcher, trustee. A consent judgment was entered in favor of Benjamin F. Fletcher. The question of the liability *vel non* of defendant Annie C. Fletcher, trustee, remains.

right hand railing collapsed in 1942 because the anchor rod holding the lower newel post had rusted through where it pierced the bottom tread. The rusting process of the rod deposited a quantity of rust on the bottom tread under the flange of the newel post. When the railing gave way it was torn from its collar on the upper newel, breaking the collar. At this time the steps were in a state of general disrepair; they rattled and were loose. The rear edge of the bottom tread, which should lock over its foundation, was broken off. The foundation riser under this tread did not have proper support. These two conditions caused the tread when stepped upon both to sag and to tilt forward. The sagging would cause the newel post to be pulled inward and the tilting would cause it to be pulled forward. Both actions would place a stress and strain upon the anchor rod at the point at which it was subjected to rusting.

The opening statement also described Gichner's negligence. Gichner's 1942 repairs consisted merely of replacing the bottom anchor rod and welding the railing into the broken upper collar. These two things were inadequate to put the steps and railing into a safe condition and failed to meet good iron construction standards. The deposit of rust from the old anchor rod was not removed. The newel post was re-erected upon it. This deprived the post of a steady base, and, more important, prevented the flange of the newel post from gaining a tight seat against the tread. The flange was held away from the tread by the presence of the rust. This rust and the fracture of the old rod were a warning that any anchor rod in the lower right newel was subject to attack from a drainage of rain and melting ice and snow. Rust deposits are themselves absorbent. By failing to remove the rust deposit, Gichner allowed an open seam to remain between flange and tread. This permitted future drainage to attack the rod within, and the absorbent quality of the rust assured that for a consider-

able period of time the anchor rod would be encased in a wet bandage.

Plaintiffs offered to prove further that good iron repair techniques would call for the removal of the old rust deposit by chipping or scraping, which would have afforded the newel a firm tight seat on the tread. Whatever seam remained should then have been caulked or bead-welded so as to make the newel watertight. Instead, the new anchor rod was left open to the attack of drainage which was to lead inexorably to new rusting. Moreover, no proper foundation was provided under the bottom tread, nor was the rear edge of this tread locked. As a result the sag and tilt of the bottom step continued, thereby causing the anchor rod to be subjected to unusual and unnecessary stresses at its weakest point. Finally, when the railing was welded into its broken upper collar the hole caused by the break was not completely filled. A sizable opening remained on the upper side of the collar through which rain water could and did enter. It would be caught by the interior of the pipe railing and conducted into the lower right newel. This failure to seal the opening permitted the railing to act as a conduit of water into the newel which held the sensitive anchor rod. These inadequacies of repair, by permitting the processes of oxidation to waste the substance of the new anchor rod so that it rusted through at the very place of the old break, led to the fall of the plaintiff Helen Hanna on May 2, 1949.

The opening statement charged that the defendant Gichner by reason of the shortcomings of its repairs created an inherently dangerous condition which was not apparent to the untrained and which imperiled the safety of those having occasion to use the railing in reliance upon its strength and security. The defendant Fletcher, the landlord, was charged with liability for creating an unsafe condition upon leased premises.

■■ I. We are faced initially with the problem of the statute of limitations.

The applicable provision of our Code prescribes the period of limitations as,

" * * * three years from the time when the right to maintain any such action shall have accrued. * * *" § 12–201, D.C.Code 1951.

Defendants contend under this provision that the three years began to run in 1942 when the repairs were made, and since the suit was not filed until December 28, 1950, it was barred. Plaintiffs on the other hand contend that the "right to maintain" the action did not accrue until the accident resulting in the injuries occurred on May 2, 1949, and that the suit, filed within three years thereafter, was timely. We agree. The Code is controlling. The action against Gichner plainly is based on negligence, sounds in tort, and did not accrue until injury resulted from the alleged negligence. Poole v. Terminix Co., 91 U.S.App.D.C. 287, 200 F.2d 746, is not apposite; it was an action for property damages due to breach of an implied warranty to do a workmanlike job. There the suit would have been timely if the limitations period were measured from the time the damage was discovered. The court held, however, that the suit was barred because the cause of action accrued when the warranty was breached, more than three years before the action was filed.[2] The policy of the law to bring repose was given effect. Here, however, the alleged negligence did not ripen into a cause of action until Mrs. Hanna was injured. We cannot shorten the time the Code allows by adding a provision that the personal injury essential to the accrual of the cause of action must occur within three years of the negligence. Foley v. Pittsburgh-Des Moines Co., 363 Pa. 1, 38–39, 68 A.2d 517, 535; Fredericks v. Town of Dover, 125 N.J.L. 288, 15 A.2d 784; Kitchener v. Williams, 171 Kan.

540, 236 P.2d 64; cf. Federal Reserve Bank of Atlanta, for Use of American Surety Co. of New York v. Atlanta Trust Co., 5 Cir., 91 F.2d 283, 117 A.L.R. 1160, certiorari denied, 302 U.S. 738, 58 S.Ct. 140, 82 L.Ed. 571.

As to the landlord Fletcher the case in the end is no different. In our view, as hereinafter appears, the action against the landlord is also in tort. Therefore, what we have said as to Gichner applies.[3]

II. We come to the question whether the opening statement made a case to go to the jury against Gichner on both negligence and proximate cause. If wanting in either respect the directed verdict was correct. As to negligence, Gichner's chief contention is that even if it be assumed that its repair work was negligently done, its responsibility was only to Fletcher, the landlord, with whom Gichner contracted, and not to Mrs. Hanna, the injured tenant. Ford v. Sturgis, 56 App.D.C. 361, 14 F.2d 253, 52 A.L.R. 619, certificate dismissed per curiam, 266 U.S. 584, 45 S.Ct. 126, 69 L.Ed. 453, is relied upon as laying down the rule in this jurisdiction that "the negligence of a contractor in constructing a building will not render him liable to a third person, who is injured in consequence thereof after the work has been completed and accepted by the owner of the building." Id., 56 App.D.C. at page 362, 14 F.2d at page 254. The authorities adduced to support a rule so stated rely principally upon the absence of privity of contract between the contractor and injured third party. The court also mentioned as a reason sometimes given "that otherwise there would be no end of suits," adding, however, that "It is elsewhere given as a better ground that the negligence of the owner in maintaining the defective building, and not that of

---

2. No question of fraudulent concealment of the breach or resulting damage was involved.

3. Even if, as the landlord suggests, the action against her might be considered as for breach of contract, the contractual obligation and its breach continued to the time of injury, for, if the obligation existed, it was to keep the premises in repair, not simply to repair them. The Code provision governing limitations upon actions for breach of simple contract, express or implied, is also three years. § 12–201, D.C.Code 1951.

the builder in constructing it, is the true proximate cause of the third person's injury. Wharton on Negligence, § 439." [4] Ibid. None of these reasons furnishes adequate ground for applying to this case a rule that the contractor may not be held liable to the tenants.

The view that such liability is precluded because there is no privity of contract between Gichner and the tenants is at variance with the principle discussed by Judge Cardozo in MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, 1053, L.R.A.1916F, 696, decided in 1916. Like that decision, we also,

"* * * put aside the notion that the duty to safeguard life and limb, when the consequences of negligence may be foreseen, grows out of contract and nothing else. * * *" 217 N.Y. at page 390, 111 N.E. at page 1053.

As to the concern that there would be no end of suits if the contractor might be held liable, there would seem to be all the ends which the law should require. Negligence must be proved. It must be proved to be the proximate cause of the injury. Contributory negligence is a defense. The plaintiff must be within the class protected, that is, one as to whom "the consequences of negligence may be foreseen." Liability exists only upon a reasonable basis consistent with rules properly applicable in tort litigation.

The view that the contractor may not be held liable to the tenants because the proximate cause of injury is not his negligence but that of the owner in maintaining the premises, turns upon a question of fact, not of law. The cause must be decided on the facts, not by a legal fiction set up to bar a factual decision. As was said in Munsey v. Webb, 37 App.D.C. 185, 189, affirmed 231 U.S. 150, 34 S.Ct. 44, 58 L.Ed. 162:

"* * * 'The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. * * *'" (The interior quotation is from Milwaukee & St. P. R. Co. v. Kellogg, 94 U.S. 469, 474, 24 L.Ed. 256.)

We return to consider further MacPherson v. Buick Motor Co., supra. A manufacturer of automobiles sold one of his cars to a dealer who in turn sold it to plaintiff. The question was whether the manufacturer could be held liable to plaintiff for injuries resulting from a sudden collapse of the car due to defective wood used in one of its wheels; that is, as the court stated, "whether the defendant [manufacturer] owed a duty of care and vigilance to any one but the immediate purchaser." The court held it did owe such a duty, saying,

"* * * If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser, and used without new tests, then, irrespective of contract, the manufacturer of this thing of danger is under a duty to make it carefully. That is as far as we are required to go for the decision of this case. * * *" 217 N.Y. at page 389, 111 N.E. at page 1053.

As Circuit Judge Phillips has said for the Tenth Circuit in Spencer v. Madsen, 142 F.2d 820, 823, this decision,

"* * * has received wide spread judicial approval and may now be regarded as stating the generally accepted law on the subject * * *",

citing United States Radiator Corp. v. Henderson, 10 Cir., 68 F.2d 87, certiorari

4. The court enumerated certain exceptions to the general rule. None of them applied there and none we think applies here, so we do not discuss them.

denied 292 U.S. 650, 54 S.Ct. 860, 78 L. Ed. 1500; Stevens v. Allis-Chalmers Mfg. Co., 151 Kan. 638, 100 P.2d 723; Restatement, Torts, §§ 395, 396. See also Moran v. Pittsburgh-Des Moines Steel Co., 3 Cir., 166 F.2d 908, certiorari denied 334 U.S. 846, 68 S.Ct. 1516, 92 L.Ed. 1770; Foley v. Pittsburgh-Des Moines Co., supra.[5]

The bridge described in the MacPherson case between the manufacturer of an article and its third party user, not in privity of contract with the manufacturer, is the same as that between a landlord's contractor or repairman and the tenant of the premises repaired; for in each case negligent conduct often may be expected to result in injury to one reasonably foreseen as a probable user. Here the tenants were to use the steps, not the landlord, as in MacPherson the ultimate purchaser was to use the car, not the dealer. See Restatement of Torts, § 385; Holmes v. T. M. Strider & Co., 186 Miss. 380, 189 So. 518, 123 A. L.R. 1190; Williams v. Charles Stores Co., 209 N.C. 591, 184 S.E. 496. In view of these developments in the law, so widely approved and so sound, we reject Ford v. Sturgis insofar as it stands for the general rule that a person injured by reason of a contractor's negligence cannot recover from the contractor if the injury occurred after the product of his defective work was accepted by the party who engaged him. See Carter v. Yardley & Co., Ltd., 319 Mass. 92, 64 N.E.2d 693, 164 A.L.R. 559, and Todd Shipyards Corporation v. United States, D.C.Me., 69 F.Supp. 609, and authorities cited therein.

■ Here there is no question from the opening statement, which in the present posture of the case we must consider as including the inferences properly drawn therefrom, see Pomeroy v. Pennsylvania Railroad, 96 U.S.App.D.C. 128, 223 F.2d 593, that if Gichner's repair was so negligently performed as to cause the railing to become insecure, there arose a probably dangerous physical condition. The railing was essential to the safe use by the tenants of the steps over the areaway. Use of the steps would be reasonably certain to place life and limb in peril unless the railing were secure. The consequence to the tenants of negligence in repair could be foreseen. Thus there were present the elements required to give rise to an obligation on Gichner's part to avoid negligence which would endanger the tenants in their dependence upon the railing. Of course we do not say there was negligence; the offers made in the opening statement might not materialize in essential respects in the evidence, or might be rebutted. Furthermore, even if the facts offered to be proved were established it would still remain for the jury to decide whether or not they constituted negligence.

■ If a porch stands for seven years and then collapses the fact that it had stood for seven years would not eliminate negligence as the cause of its collapse. One could illustrate in a variety of ways that use for some years without accident of a part of a dwelling, such as a porch or protective railing, would not in and of itself completely rebut the fact of negligence in its construction or repair. Such use without injury is to be considered in resolving the issue of negligence; but so also is proof of actual defective workmanship. There is here no mere deterioration due to use and the elements. As we have seen, the opening statement contains detailed specifications of omissions and negligent acts in the course of the repair work. Whether true or not we do not know; that was for proof at a trial, and then for jury consideration with the other evidence. It was not necessary for plaintiffs to state, in addition, how long the railing should have lasted, once they had stated that while Mrs. Hanna was using it the railing gave way to her injury because of the specified negligent repair by Gichner. In other words, negligence need not be stated in

5. Mr. Justice Jackson refers to MacPherson as the "landmark opinion of Judge Cardozo for the New York Court of Appeals." Dalehite v. United States, 346 U.S. 15, 52 note 6, 73 S.Ct. 956, 976 note 6, 97 L.Ed. 1427, dissenting opinion.

all possible ways. It can be stated in the way plaintiffs say it actually occurred. Here this was done, in detail, not by generalizations. Plaintiffs' offer fairly construed included proof that the workmanship fell below proper construction standards. As a matter of fact Gichner's principal contention is not that negligence was not stated but that the tenants have no cause of action for injuries due to its negligence, since its contract to repair the railing was only with the landlord. Having rejected this theory of the case as out of line with well established principles of law, we hold that, on the basis of the opening statement, there was a factual issue for the jury to decide whether or not negligence could be attributed to Gichner in making the repairs.

There remains the important question whether the jury could validly find on the basis of the opening statement that such negligence was a proximate cause of the accident. Proximate cause is ordinarily a jury question. This has long been settled in this jurisdiction. See Munsey v. Webb, supra, and Washington, A. & Mt. V. Ry. Co. v. Lukens, 32 App.D.C. 442, 454–455, where it is said:

" * * * Without reviewing the many cases bearing on the vexed question of proximate and remote cause, we content ourselves with referring to the following cases which hold that what is the proximate cause of an injury or loss in actions of this kind is ordinarily a question for the jury: Milwaukee & St. P. R. Co. v. Kellogg, 94 U.S. 469, 474, 476, 24 L.Ed. 256, 258, 259; Guenther v. Metropolitan R. Co. 23 App.D.C. 503, 510[6]; Schumaker v. St. Paul & D. R. Co. 46 Minn. 39, 43, 12 L.R.A. 257, 48 N.W. 559. The facts of this present case bring it within that rule. See also Lindsey v. Pennsylvania R. Co. 26 App.D.C. 503, 3 L.R.A.(N.S.) 218, 6 A. & E. Ann.Cas. 862. * * * "

And in Howard v. Swagart, 82 U.S.App. D.C. 147, 151, 161 F.2d 651, 655, the court, in part quoting from S. S. Kresge Co. v. Kenney, 66 App.D.C. 274, 275, 86 F.2d 651, 652, stated:

" * * * this court has defined the proximate cause of an injury to be 'that cause which, in natural and continual sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred.' * * * "

See, also, LeFoe v. Corby Co., 38 App.D. C. 54, 61–62; Richmond, F. & P. R. Co. v. Brooks, 91 U.S.App.D.C. 24, 26, 197 F.2d 404, 406, certiorari denied 344 U.S. 828, 73 S.Ct. 31, 97 L.Ed. 644.

██ We cannot say as matter of law that the fault of Gichner, assuming it were proved, was not a cause which in natural sequence, unbroken by any efficient intervening cause, produced the injury. Of course the jury could find for Gichner in this regard; but the law itself does not say that the passage of nearly seven years, or the action of the elements, with respect to a facility built for use while constantly exposed to the elements, constituted an efficient intervening cause of the giving way of the railing, so that any causal connection between Gichner's negligence and the giving way was necessarily broken. Over and above the normal effect of use and the elements it was here clearly stated that specified defects in the repair caused conditions which precipitated the accident at the time it occurred. This was the case stated. In these circumstances the law says, we think, that the question of proximate cause is one of fact for the jury. Moreover, as we have indicated elsewhere, negligence on the part of the landlord, or of the tenant, in failing to maintain the railing in good condition, whichever had the responsibility, while it may be considered by the jury in determining proximate cause, is not by virtue of law itself, regardless of the

6. The correct citation to the Guenther case is 23 App.D.C. 493.

facts as a whole, an intervening cause which lifts all responsibility from Gichner's shoulders. However heavy the plaintiffs' burden of proof in bringing home proximate cause to Gichner's negligence, the problem is within the realm of facts for the jury and not of law for the court except as the court must guide the jury by appropriate instructions.

To hold that the issue of proximate cause, as well as the issue of negligence, was for the jury, is not to make the contractor an insurer. On the contrary, the issues of fact upon which liability depends are open. Once we accept the rule followed by courts generally, in rejecting the notion that even though a contractor's negligence is the proximate cause of an injury to a tenant who is foreseen to be the one who is to use the repaired facility, nevertheless the contractor cannot be held liable because his repair contract is with the landlord, the facts offered to be proved bring this case within the general pattern of tort litigation proper for jury trial.

III. ■ We come now to the question of the landlord's liability. The only theory presented by appellants is that since Gichner's repair work created an unsafe condition upon the premises the landlord is liable under the doctrine of Bailey v. Zlotnick, 80 U.S.App.D.C. 117, 149 F.2d 505, 162 A.L.R. 1108. This puts aside the question whether, notwithstanding Bowles v. Mahoney, 91 U.S.App. D.C. 155, 202 F.2d 320, certiorari denied 344 U.S. 935, 73 S.Ct. 505, 97 L. Ed. 719, the landlord should be held liable because of an obligation to keep the premises in repair. In Bowles v. Ma-

honey it is stated that the lessor, absent any statutory or contractual duty, is not responsible for any injury resulting from a defect which developed during the term.[7] Judge Bazelon, dissenting, thought this rule should be abandoned, saying the court should "cast the presumptive burden of liability upon the landlord" in the absence of a contrary arrangement for the tenant to make repairs. In the case at bar the court sitting en banc is not called upon to choose between these conflicting views, for appellants do not request this.[8] They argue for application of the more limited rule set forth in Bailey v. Zlotnick, supra [80 U.S.App.D.C. 117, 149 F.2d 506]. Here, as there, the landlord undertook to have the repairs made and employed an independent contractor to make them. Bailey v. Zlotnick held that, notwithstanding it was the tenant's duty to repair and there would have been no violation of the landlord's duty had the plaster which caused the injury fallen through mere neglect, the landlord was "under a duty not to create an unsafe condition on the premises either permanent or temporary by any affirmative action on his part." Such affirmative action was attributed to him when his contractor created the condition. This is another way of saying that when the negligence of the landlord's contractor is the proximate cause of the injury, the landlord as well as the contractor may be found liable if the injury is not due to the negligence of the contractor in the actual performance of the details of the work but is due to "the condition of the premises which results from the negligence."[9] See, partic-

---

7. The court quoted Security Savings & Commercial Bank v. Sullivan, 49 App. D.C. 119, 120, 261 F. 461, 462, as follows:
 " '* * * It is settled law that where the owner of premises, by lease, parts with the entire possession and control of the premises, and the tenant, either by express provision of the lease or by the silence of the lease on that subject, assumes liability for the keeping of the premises in proper repair, the tenant, and not the owner, will be liable in case of an accident due to negligence in al-

lowing the premises, or any portion thereof, to get out of repair.' "

8. In which event the better practice in such an important matter is to refrain from deciding the question. See Lehker v. Joyce, 51 App.D.C. 35, 36, 273 F. 763, 764; Kirk v. St. Joseph Stock Yards Co., 8 Cir., 206 F.2d 283, 287, 40 A.L.R.2d 980; World Fire & Marine Ins. Co. v. Carolina Mills Dist. Co., 8 Cir., 169 F.2d 826, 829, 4 A.L.R.2d 523.

9. See Thomas v. Lane, 221 Mass. 447, 109 N.E. 363, L.R.A.1916F, 1077, where it

ularly, note 4, Bailey v. Zlotnick. In the case at bar, the injury clearly was caused by the "condition of the premises" rather than by Gichner's "performance of the details of the work." The landlord urges, however, that here, in contrast with Bailey v. Zlotnick, no unsafe condition of the premises was *created* even if Gichner was negligent, because the railing was already unsafe when Gichner undertook its repair. But if the landlord's contractor left the railing in an unsafe condition, the existence of such a condition prior thereto is immaterial. Of course the landlord will not be liable unless the jury finds that the injury to the plaintiff occurred as a consequence of Gichner's negligence. But we cannot on the one hand hold, as we do, that Gichner might be found liable in tort for having negligently left the railing in such condition as would probably be certain to place the life and limb of the tenants in peril, and on the other hand hold, with respect to the landlord, that this condition was not an unsafe one within Bailey v. Zlotnick. It is true this makes the responsibility of the landlord like that of the contractor where the condition of the premises, brought about by his contractor, is the cause of the injury. But we see no objection to this. The responsibility is not a broad one. The principles of the MacPherson case, though applied to a contractor as well as to a manufacturer, as has been generally done by the courts, are limited to the negligent creation of danger which results in injury to one whom the author of the danger ought to be on guard to protect. Furthermore, there is left to the landlord the opportunity to convince the jury that the proximate cause of the injury was not the unsafe condition of the premises.

Reversed and remanded for further proceedings not inconsistent with this opinion.

BAZELON, Circuit Judge, with whom EDGERTON, Chief Judge, joins (concurring).

 I concur in the foregoing opinion of the court. I would add only this. Bailey v. Zlotnick, 1945, 80 U.S.App.D.C. 117, 149 F.2d 505, 162 A.L.R. 1108, is sufficient authority, as the court says, upon which to rest the landlord's liability. Under that case, a landlord, who is not required by agreement to make repairs but does so voluntarily, is "under a duty not to create an unsafe condition" in doing his beneficent act. But since the effect of this principle may be to stifle such beneficence, I would have preferred to rest liability on a broader view set forth in my dissent in Bowles v. Mahoney, 91 U.S.App.D.C. 155, 160, 202 F.2d 320, 325, certiorari denied, 1953, 344 U.S. 935, 73 S.Ct. 505, 97 L.Ed. 719. According to this view, the realities of modern day urban living require that "in the absence of express provision to the contrary, a landlord who leases property should be held to a continuing obligation to exercise reasonable care to provide that which the parties intended he should provide, namely, a safe and habitable dwelling." 91 U.S.App.D.C. at page 161, 202 F.2d at page 326.

PRETTYMAN, Circuit Judge, with whom WILBUR K. MILLER and DANAHER, Circuit Judges, join (dissenting).

## I

### In Respect to the Contractor

We do not find in the question we must decide the abstruse legal problems found there by our brethren. We would affirm the District Court, because we agree with the trial judge upon the simple proposition that counsel for the plaintiffs failed to state a case.

The case sounds in tort. If it does not rest upon tort it is barred by the statute of limitations. The tort upon which it rests is negligence. The negligence is alleged to have been committed by the contractor which in 1942 repaired a cast-iron railing outside a dwelling. The railing served safely the people en-

is assumed that a tenant could recover against a landlord if he and not his invitee is injured when the landlord gra-

tuitously agrees to repair, does so, and is negligent in so doing.

tering and leaving the house for seven years after the repair job. It gave way in 1949. The trial court directed a verdict for the defendants upon the completion of the opening statement of plaintiffs' counsel.

This opening statement was not an ordinary, casual, preliminary sketch, designed merely to familiarize the jury with the nature of the case. Counsel was put on notice, prior to making the statement, that a motion to dismiss would be made when he had finished. So he knew he must state his case if he had one. After the statement and the motion for a directed verdict, and before ruling, the trial judge asked whether counsel had anything to add.[1] The attorney replied he did not think so except for several matters relating to the lease, which he then stated. We are assured, therefore, that he stated the maximum his facts would allow.

The statement of counsel for the plaintiffs was to the following effect:

The person injured was a tenant in the house and had lived there for sixteen years before the accident. The front entrance to the house was up a flight of cast-iron steps with a cast-iron railing. This railing gave way in 1942. This same tenant or her husband reported the matter to the landlord, and the landlord employed defendant contractor, Gichner, to make the repairs. Repairs were made. In 1949 Helen Hanna was going down the steps and grasped the railing. It gave way, and she fell and was injured.

The railing was secured at the top and bottom steps by newel posts. Inside the posts were anchor rods secured on the underside of the step. Before 1942 the steps rattled and tilted. Counsel for plaintiffs said: "We will show you, ladies and gentlemen, that what caused this railing to give way was that the anchor rod inside this newel post rusted out." He said the contractor, Gichner, in 1942 did several things which brought about that result. At that time the an-

chor rod had rusted out and there was an accumulation of rust on the steps under the newel post. Gichner put in a new rod but did not remove the rust. Counsel said plaintiffs would show that to replace an anchor rod in that fashion is not good iron construction and exposed the rod to rust. The footing for the riser on the bottom step was gone in 1942; Gichner did nothing about that, so the step did not bear on the support. The back edge of the bottom tread was broken off, so that the step sagged and pulled on the newel post. This made it subject to erosion and "it would be inevitable that it would give way". Plaintiffs would show that under good construction practice a support should have been built so that the step would not sag. Further, the railing was held in place by a collar, which was broken; Gichner did not replace the collar but welded the rail into the collar, leaving a sizable hole. Rain water would run into this hole, through the railing, and into the newel post.

Counsel for plaintiffs said: "Now we will show you, ladies and gentlemen, those four items of what was done, and what was improperly done, back in 1942. We will show you, as I said, that they led just as inexorably as death itself to the collapse of this rail in 1949." Counsel went on to describe Mrs. Hanna's injuries, which were severe. He concluded: "That negligence is this: Annie Fletcher, the landlord, undertook to have those premises repaired. We claim they were repaired in a negligent manner, that these steps and this railing constituted an unknown danger, unless they were properly constructed and properly repaired, because people would invariably rely on that railing in going down the steps crossing the areaway."

Counsel then described the injuries, and thus concluded the statement.

Whether the trial judge properly directed a verdict on the conclusion of this statement depends on whether a case in negligence had been stated. To make a

[1] See McGovern v. Hitt, 62 App.D.C. 33, 64 F.2d 156 (D.C.Cir. 1933), certiorari denied 290 U.S. 637, 54 S.Ct. 54, 78 L. Ed. 554 (1933).

case it was necessary for plaintiffs to show that the contractor was negligent and that its negligence was the proximate cause of the injury.

One does not state a case of negligence merely by adjectives or by rhetorical summations. It is easy enough to aver that a defendant did not do what a prudent man should have done, but such a declaration is not enough to state a case. Negligence must be made out by a recitation of facts. What facts did the plaintiff say he would prove?—not what descriptive phrases did his lawyer use. Counsel in the case at bar said this railing gave way because the anchor rod rusted out. The maximum of his claim was that the railing rusted out. But the facts he recited showed that for seven years following the repair job the railing stood, in constant service, out-of-doors, as part of the entrance to a house, in sun, rain and snow, cold and heat, freezing and scorching, without breaking or falling or causing injury to anybody. There were seven years of wear and tear by constant use, seven years of the destructive forces of the weather working on a piece of cast iron. For seven years the railing was safe.

This is not a case in which an object supposed to withstand certain stresses collapsed when it was subjected to such stresses. This railing endured for seven years the use for which it was designed. No claim is made that the strain under which it collapsed was any different from that which it had withstood all those years. The railing simply wore out from the use and the weather.

The fact of seven years' safe use made a strong initial case that reasonable care had been exercised in the repair.[2] This outstanding fact faced plaintiffs when they attempted to state a case of negligence against the contractor and when they sought to establish that the negligence was the proximate cause of the injury. Their problem was to assert facts which would show that the collapse of the railing in 1949 was directly, without intermediate cause, the result of negligence in 1942.

This railing was made of cast iron. Cast iron rusts, and especially does it rust when exposed to weather and to wear. Counsel declared that the repairs "led just as inexorably as death itself to the collapse of this rail in 1949." But weather and wear alone lead just as inexorably to the collapse of a cast-iron stair rail. The critical problem was a matter of time. The *sine quo non* of plaintiffs' case was that the collapse in seven years was so much sooner than the normal inevitable disintegration that negligence in the repair work was shown. What was the normal expected life of such a railing under such conditions? Was it so much longer than seven years that the collapse at the end of seven years showed negligence in the construction? The obvious requirement for making a case of negligence upon the basic facts stated was to show that, had the railing been properly repaired in 1942, it would have lasted substantially longer than seven years. This was the very heart of plaintiffs' case. But no word in the statement anticipated proof of how long the railing should have lasted. The case presented in the statement was on the bare isolated assertions that the work in 1942 was not "good" construction and the rail rusted out in seven years. That was all.

Moreover, in the face of the fact of seven years of safe service, another es-

2. See, e. g., Ford Motor Co. v. Wolber, 32 F.2d 18 (7 Cir. 1929), certiorari denied 280 U.S. 565, 50 S.Ct. 25, 74 L. Ed. 619 (1929); Dillingham v. Chevrolet Motor Co., 17 F.Supp. 615 (D.C. W.D.Okl.1936); Auld v. Sears Roebuck & Co., 261 App.Div. 918, 25 N.Y.S.2d 491 (1941), affirmed 288 N.Y. 515, 41 N. E.2d 927 (1942); Jamison v. Reda Pump Co., 190 Okl. 593, 126 P.2d 71 (1942); Miller v. Davis & Averill, 137 N.J.L. 671, 61 A.2d 253 (1948); Gorman v. Murphy Diesel Co., 3 Terry 149, 42 Del. 149, 29 A.2d 145 (1942); Howard v. Redden, 93 Conn. 604, 107 A. 509, 7 A.L.R. 198 (1919). Cf. De Salvo v. Stanley-Mark-Strand Corporation, 281 N.Y. 333, 23 N. E.2d 457 (1939). But see Hale v. Depaoli, 33 Cal.2d 228, 201 P.2d 1, 13 A.L. R.2d 183 (1948).

sential of plaintiffs' case was the maintenance of the railing—the painting, oiling or scraping—necessary to keep it in repair. This sort of facility obviously must be kept in repair, protected, just as a house or a machine must be. Merely to show the railing rusted out in seven years would not prove that a repairman that many years ago was negligent. The contractor on that job was not liable for a subsequent failure of maintenance or upkeep. An essential element of plaintiffs' case was that the railing had received during the seven years the normal maintenance necessary to keep it in serviceable condition. No word on that subject was proffered in this case. It was a fatal lack.

Counsel for plaintiffs said he would show the repair work by this contractor was not "good" construction. The established standard for measuring negligence is what a reasonably prudent man would do, and the evidence is what is customary in the trade. Counsel did not propose this standard or this proof; he proposed a new standard and a different one, and a new and different proof. The established methods are factual and are proved as factual matters. The standard proposed here is purely a matter of opinion—whether in a witness's opinion this was good construction; not whether it was customary or what a reasonably prudent contractor would have done. The ruling of this court means, in ultimate effect, that a plaintiff can get to a jury if he presents testimony that the given construction, or practice, was not, in the opinion of the witness, "good" construction or practice. We do not agree with so fundamental a change in the establishment of negligence.

What we have said about negligence applies with even greater force to the other phase of plaintiffs' case, proximate cause. Plaintiffs were required to show facts which tended to prove that the repair work in 1942 was the cause, and the proximate cause, of the collapse of the railing in 1949. Faced with the fact of seven years of safe service, seven years of innumerable events and incidents, weather and wear, they needed to show some connecting relation, some negative of the compelling force of the seven years of safe use. The principles have been elaborately discussed by the authorities. Some advocate a "But for" rule, that but for the act of the defendant the damage would not have occurred. Some state a "Probable Consequence" rule, that a wrongdoer is liable for probable consequences only.[3] In any event causation is the true ultimate essential in this phase of a plaintiff's case, and the causation is a factual matter. Plaintiffs in the case at bar faced a fact of seven years of safe use after the alleged wrongful act. They were required to show a causal connection. They had to negative that long, safe use. Viewing the matter under one statement of the rule, if collapse under the given stress at the end of seven years' use, without normal repair meantime, would have occurred in any event due to wear and weather, the repair work in 1942 cannot be regarded as the proximate cause of the failure. Plaintiffs had to span that gap with some factual showing. Or, viewing the matter from the standpoint of the other rule, the contractor was not liable unless collapse at the end of seven years' use was a probable consequence of his work. Plaintiffs were under necessity of presenting facts which showed that as of 1942 the collapse in 1949 was a probable consequence of the work. Plaintiffs offered no factual data on the factual problem of causation. There were rhetorical conclusions, but no word of factual data to span the gap of seven years appears in their statement. Surely one does not show proximate cause, or any cause, by showing merely that a cast-iron railing was repaired in 1942, the work was not "good" construction, and seven years later it rusted out. The plaintiffs simply failed to state a case of proximate cause, in my judgment.

---

3. See Smith, Legal Cause in Actions of Tort, 25 Harv.L.Rev. 103, 106, 114 (1911); McLaughlin, Proximate Cause, 39 Harv.L.Rev. 149, 155 (1925).

Cases like the one at bar present problems not found in the ordinary negligence case. The fact that an article has served its appointed purpose for a long period of time may not in itself conclusively bar all claims of negligence against the original contractor. But neither may a plaintiff skip backward over intervening years and intervening elements at work and hold a repairman liable for the normal results of seven years of wear and deterioration. Plaintiffs' counsel was given full opportunity to state his case. To succeed it was necessary that he do more than point to the fact of repair and the fact of collapse and assert merely that the repair was not good iron construction.

It may be that plaintiffs stated a case against an insurer. The fact of the work, plus the fact of the collapse, may well make a case of liability upon an insurance, although even in such a case the seven years of safe service might be a bar. But this contractor was not an insurer. There is no law that makes a contractor an insurer. This case had to be made in negligence, and that is a different problem. It seems to us that the court, in the present opinion, ignores the difference.

There is much substance and sound sense in the cases which have dealt with this problem in the past. A study might well begin with Huset v. J. I. Case Threshing Mach. Co.[4] and the opinion written by Circuit Judge Sanborn. Originally there was a general rule, which achieved almost universal acceptance in England and this country, that a contractor was not liable to third parties for negligence. The premise was non-privity of contract. But exceptions arose and also came to be universally accepted. One such exception recognized many years ago was, as stated in Huset, that an act of negligence by a manufacturer or contractor which is imminently and inherently dangerous is actionable. In MacPherson v. Buick Motor Co.[5] then Associate Judge Cardozo wrote that liability of the manufacturer rests upon the principle that he ought to be liable for negligence if the article is reasonably certain to place life and limb in peril if negligently manufactured.[6] In MacPherson the court had before it an automobile wheel made of wood. The wood was defective, and the wheel collapsed. But the wood was defective when it was put in the wheel; it was liable to collapse from the moment of its first use. We do not have such a case before us. To be sure, a railing alongside a stairway may be a dangerous thing, and, if it were of defective material or so defectively made that it collapsed when put to use, we might have a case comparable to MacPherson. But in our case the railing merely wore out, rusted out in the course of time and usage; it did not collapse when put to its intended use. The problem which was in MacPherson is simply not here, and this court's desire to follow that case does not justify its conclusion in the case at bar.

The latest exhaustive treatment of the problem seems to be in the opinion of the Supreme Judicial Court of Massachusetts in Carter v. Yardley & Co.[7] That case involved a bottle of perfume, into which some harmful ingredient had found its way so that when plaintiff Carter applied it to her skin she was burned. The case in no way resembles the one before us. But even in that case the court was careful to point out: "This statement of the principle conforms to the rule that a failure to take special precaution against a danger that is only remotely possible is not negligence."[8] In the case at bar the danger against which care is alleged to have been necessary was that the railing would wear out in

---

4. 120 F. 865, 61 L.R.A. 303 (8 Cir. 1903).

5. 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696 (1916).

6. He also wrote upon the subject in his The Growth of the Law (Yale Univ. Press 1924), p. 77.

7. 319 Mass. 92, 64 N.E.2d 693, 164 A.L.R. 559 (1946).

8. Id., 64 N.E.2d at page 696.

seven years—upkeep during the seven years being omitted from consideration. Under the rule of even such a case as Carter negligence was not shown in plaintiffs' case here. Many cases similar to MacPherson and Carter can be found, but they are not the present case as we see it.

In our view the court in its present opinion unnecessarily goes much too far. Whether the opinion says so or not, the decision upon the facts involved establishes a rule that a person, not privy to a contract, injured by a product of a contractor or manufacturer, can go to a jury upon showing merely that the original manufacture or construction was not "good", that in the course of time and use the article wore out and after some years collapsed because of the final deterioration of a part which might have been constructed or manufactured in a different manner. And this without alleging or proving that the article would have lasted longer had it been made differently, or that the article was kept in good repair, or any other factual connection between the work and the injury, or even that the customary practice in the trade was not followed or that the contractor failed to exercise the care a reasonably prudent man would exercise in view of the fact that the article would normally and inevitably wear out sometime. This, to us, is revolutionary, and we believe it unsound. It makes a contractor or manufacturer an insurer, it makes him liable in the jury room for conditions arising during a long interim period of safe use, for a condition over which he has no control and no power to remedy. It lays manufacturers and contractors open to the caprice of juries, under the pressure of dramatic injuries, in a field of the law in which courts have heretofore been careful to subject manufacturers to a sound rule of liability but not to throw them open to claims by any user at any time without direct and specific showing. The necessity, as a matter of public policy, of reasonable limitations upon this liability has always heretofore impressed the courts.

Finally we come to the rule which governed the trial judge in acting upon the motion. In Tobin v. Pennsylvania R. Co.[9] we quoted from the Restatement:[10]

"'e. *Function of trial court.* If there is no legislative enactment covering the circumstances of a particular case and there is no decision of an appellate court which establishes whether particular conduct is or is not negligent, a trial judge may withdraw a case from a jury whenever the jury could not reasonably find the defendant's conduct to be negligent.'"

We then said:

"The rule stated in the Restatement of the Law of Torts is almost identical in terms with the general rule of the District of Columbia concerning motions for directed verdicts."

It seems to us clear that, had plaintiffs gone to trial and proved only what they said they would prove, the jury could not reasonably have found, on the basis of those facts alone, that the contractor's conduct was negligent. We agree with the trial judge.

## II

### In Respect to the Landlord

We would affirm as to the landlord, because no factual case of negligence was made out against the contractor. Since the contractor's negligence is the only factual basis upon which liability of the landlord is premised, the whole case falls.

The court discusses Bailey v. Zlotnick[11] and Bowles v. Mahoney.[12] The Bailey case held that, where it is the tenant's duty to repair but the landlord does in fact repair, the landlord is under a du-

9. 69 App.D.C. 262, 266, 100 F.2d 435, 439 (D.C.Cir.1938), certiorari denied 306 U.S. 640, 59 S.Ct. 488, 83 L.Ed. 1040 (1939).

10. Restatement, Torts § 285, Comment.

11. 80 U.S.App.D.C. 117, 149 F.2d 505, 162 A.L.R. 1108 (D.C.Cir.1945).

12. 91 U.S.App.D.C. 155, 202 F.2d 320 (D. C.Cir.1952), certiorari denied 344 U.S. 935, 73 S.Ct. 505, 97 L.Ed. 719 (1953).

ty not to create an unsafe condition. In the case at bar the unsafe condition had existed long before the repair work was done in 1942. The repairs then made did not create a defective condition; they remedied an existing condition. The remedy was effective for seven years. So the landlord was not liable as of 1942, under the doctrine of Bailey. The 1949 defect grew gradually over the years due to rust. Bowles held that where a landlord has no duty to repair he is not liable for negligence in failing to repair. This landlord had no duty to repair. So he was not liable for the defective condition which developed from 1942 to 1949. Alternatively, therefore, we would affirm as to the landlord upon the basis of Bailey and Bowles.

BASTIAN, Circuit Judge, having entered the judgment appealed from while a member of the District Court, took no part in the hearing or consideration of this appeal.